UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------x

| | |
|---|---|
| **MARK A. WESTBROOKS,**<br>Plaintiff,<br>v.<br>THE CITY OF NEW YORK; SERGEANT CARLOS HERNANDEZ, Shield No. 2085, individually; POLICE OFFICER RUBEN PERDOMO-CRESPO, Shield No. 11626, individually; POLICE OFFICER GUO OUYANG, individually; SHARON JOACHIM, individually; and JOHN/JANE DOE SUPERVISORS 1-10, individually,<br>Defendants. | **Case No. 1:26-cv-00104-RA-RFT**<br>Hon. Ronnie Abrams, U.S.D.J.<br>Hon. Robyn F. Tarnofsky, U.S.M.J.<br><br>**SECOND AMENDED COMPLAINT**<br>**JURY TRIAL DEMANDED** |

-----------------------------------------x

# SECOND AMENDED COMPLAINT

Plaintiff Mark A. Westbrooks, proceeding pro se, for his Second Amended Complaint against Defendants The City of New York, Sergeant Carlos Hernandez (Shield No. 2085), Police Officer Ruben Perdomo-Crespo (Shield No. 11626), Police Officer Guo Ouyang, Sharon Joachim, and John/Jane Doe Supervisors 1-10, alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action brought pursuant to 42 U.S.C. §§ 1983, 1981, and 1988; the Fourth and Fourteenth Amendments to the United States Constitution; Title II and Title V of the Americans with Disabilities Act, 42 U.S.C. §§ 12132, 12203; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107.

2. On September 24, 2024, Plaintiff Mark A. Westbrooks—a 100% service-connected disabled veteran lawfully using a federally protected Other Power-Driven Mobility Device ("OPDMD") in the 42nd Street/8th Avenue MTA subway passageway—was unlawfully stopped, forcibly and painfully handcuffed without justification, subjected to race-based verbal abuse, denied medical treatment despite visible injury, and humiliated by New York City Police Department officers acting under color of state law.

3. Plaintiff is Black. The NYPD officers targeted him not because of any unlawful conduct—there was none—but because of his race and because he was using a mobility device in a public transit facility. Plaintiff was compliant, cooperative, and unarmed throughout.

4. The NYPD's own Civilian Complaint Review Board ("CCRB") independently investigated this incident, reviewed body-worn camera ("BWC") footage from all three Defendant officers, conducted officer interviews, and issued a fully substantiated determination on December 22, 2025—finding misconduct by every Defendant officer on multiple grounds, including the highest-level CCRB penalty recommendation (formal Charges) against Sergeant Hernandez for race-based offensive language.

5. Plaintiff seeks compensatory damages, punitive damages against the individual Defendants, declaratory relief, and attorneys' fees pursuant to 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) over Plaintiff's federal claims arising under 42 U.S.C. §§ 1983 and 1981, the Fourth and Fourteenth Amendments, Title II and Title V of the ADA, and Section 504 of the Rehabilitation Act.

7. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiff's state and city law claims, as they arise from the same case or controversy as the federal claims.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred in New York County, within the Southern District of New York.

## CONDITIONS PRECEDENT

9. Prior to commencing this action, Plaintiff timely filed a Notice of Claim with the Comptroller of the City of New York on November 22, 2024—fifty-nine (59) days after the September 24, 2024 incident—well within the ninety-day period required by New York General Municipal Law ("GML") § 50-e. The Notice of Claim was assigned No. 2024 PI 037725.

10. More than thirty days elapsed between the filing of the Notice of Claim and the commencement of this action, and the City has not adjusted or settled the claim. GML § 50-i is therefore satisfied.

11. Plaintiff has exhausted all applicable administrative prerequisites to the filing of state law claims in this action.

## PARTIES

12. Plaintiff MARK A. WESTBROOKS is a resident of Brooklyn, New York, and a 100% service-connected disabled United States military veteran. At all times relevant hereto, Plaintiff used an Other Power-Driven Mobility Device (OPDMD) to traverse public spaces, including the MTA transit facility at issue, as a result of his service-connected disability. Plaintiff is Black.

13. Defendant THE CITY OF NEW YORK ("City") is a municipal corporation organized and existing under the laws of the State of New York. The City operates the New York City Police Department ("NYPD") and is responsible for the policies, customs, training, supervision, and discipline of NYPD officers. The City is sued directly under Monell v. Department of Social Services, 436 U.S. 658 (1978), and for state law claims.

14. Defendant SERGEANT CARLOS HERNANDEZ, Shield No. 2085 ("Hernandez"), was at all relevant times a sergeant employed by the NYPD, acting within the scope of his employment and under color of state law. He is sued in his individual capacity. Hernandez supervised and directed the unlawful stop, ordered the denial of adjustments to tight restraints, made race-based verbal remarks to Plaintiff, and was the commanding officer present during the incident.

15. Defendant POLICE OFFICER RUBEN PERDOMO-CRESPO, Shield No. 11626 ("Perdomo-Crespo"), was at all relevant times a police officer employed by the NYPD, acting within the scope of his employment and under color of state law. He is sued in his individual capacity. Perdomo-Crespo physically applied excessively tight handcuffs to Plaintiff, refused to loosen them despite Plaintiff's repeated requests and Plaintiff's visible distress, and failed to obtain medical treatment for Plaintiff.

16. Defendant POLICE OFFICER GUO OUYANG ("Ouyang") was at all relevant times a police officer employed by the NYPD and assigned to the NYPD Task Force, acting within the scope of his employment and under color of state law. He is sued in his individual capacity. Ouyang was present throughout the incident, participated in Plaintiff's unlawful detention, failed to intervene to prevent the excessive force applied by Perdomo-Crespo, and failed to obtain medical treatment for Plaintiff despite being in a position to do so.

17. Defendant SHARON JOACHIM ("Joachim") was at all relevant times employed as a Claims Examiner by the Office of the Comptroller of the City of New York. She is sued in her individual capacity. Joachim received, processed, or was responsible for the ADA Reasonable Modification Demand served upon the Comptroller's Office on or about December 3, 2025, and failed to respond to, act upon, or forward the ADA demand to appropriate City personnel within a reasonable time, in retaliation for and/or in deliberate indifference to Plaintiff's federal disability rights.

18. Defendants JOHN/JANE DOE SUPERVISORS 1-10 are presently unidentified supervisory NYPD officers who had supervisory responsibility over Hernandez, Perdomo-Crespo, and/or Ouyang on September 24, 2024, and who were responsible for training, supervising, and disciplining those officers. Their identities will be determined through discovery.

## STATEMENT OF FACTS

### A. Plaintiff's Background and Use of Federally Protected OPDMD

19. Plaintiff is a 100% service-connected disabled veteran of the United States military. As a result of his service-connected disabilities, Plaintiff uses an Other Power-Driven Mobility Device ("OPDMD") as defined by the U.S. Department of Justice regulation at 28 C.F.R. § 35.137, enacted pursuant to the ADA. An OPDMD is any mobility device powered by batteries, fuel, or other engines—not specifically designed as a mobility device for people

with disabilities—that is used by individuals with mobility disabilities for the purpose of locomotion.

20. Title II of the ADA and 28 C.F.R. § 35.137 require entities that operate public transportation facilities, including MTA transit stations, to permit individuals with mobility disabilities to use OPDMDs in any area open to pedestrian use unless the entity can demonstrate the type of device cannot be accommodated. This regulation has been in effect since March 15, 2011—more than thirteen years before the events at issue.

21. On September 24, 2024, Plaintiff was lawfully present in the MTA transit passageway at 42nd Street and 8th Avenue, New York, New York, using his OPDMD as he was federally entitled to do.

## <u>B. The Unlawful Stop and Detention</u>

22. On September 24, 2024, Plaintiff was traversing the MTA subway passageway at 42nd Street and 8th Avenue, utilizing his federally protected OPDMD, engaged in no unlawful activity.

23. Defendant Hernandez, accompanied by Defendants Perdomo-Crespo and Ouyang, approached Plaintiff and stopped him without any articulable reasonable suspicion that Plaintiff had committed, was committing, or was about to commit any criminal offense. Plaintiff's presence in the transit facility using an OPDMD is not a crime, and any transit rule or practice that conflicted with Plaintiff's federally protected right to use his OPDMD is preempted by federal law.

24. Plaintiff did not resist, attempt to flee, behave aggressively, or give Defendants any objective basis to believe he posed a threat or had engaged in unlawful activity. Plaintiff politely inquired about the basis for being stopped. Plaintiff was cooperative and compliant throughout the entire encounter.

25. Defendants unlawfully seized Plaintiff within the meaning of the Fourth Amendment, detaining him without reasonable suspicion or probable cause. The detention was not a brief investigatory stop but escalated into a prolonged, custodial encounter.

## <u>C. The Excessive Force and Handcuffing</u>

26. Without lawful justification, Defendant Perdomo-Crespo physically restrained Plaintiff by applying metal handcuffs. The handcuffs were applied with excessive tightness, causing immediate and severe pain to Plaintiff's wrists.

27. Plaintiff explicitly and repeatedly told Defendants that the handcuffs were too tight and were causing him pain and injury. Plaintiff specifically requested that Perdomo-Crespo or any present officer adjust or loosen the handcuffs. These requests were made to Perdomo-Crespo and to Hernandez as the supervising sergeant.

28. Defendant Hernandez—as the supervising officer—had direct authority to order the handcuffs adjusted and refused to do so. Defendant Perdomo-Crespo refused to loosen or adjust the handcuffs despite Plaintiff's audible and repeated requests. Defendant Ouyang was present, observed Plaintiff's distress, and failed to intervene.

29. Defendants compelled Plaintiff to walk an extended distance through the transit facility while restrained in excessively tight handcuffs, despite Plaintiff's mobility disability and his use of an OPDMD, causing additional physical injury, humiliation, and pain consistent with a forced march of a disabled detainee in violation of clearly established constitutional standards.

30. During the course of the encounter, Plaintiff was spat upon, constituting a further unlawful harmful touching and dignitary harm under both federal and state law.

31. Plaintiff sustained visible and documented physical injury to his wrists as a result of the excessively tight handcuffing. By the conclusion of the encounter, Plaintiff's wrists exhibited visible swelling.

## D. Race-Based Conduct and Verbal Abuse

32. During the encounter, Defendant Hernandez made verbal remarks to Plaintiff that were explicitly based on Plaintiff's race. These remarks were made in the course of and in connection with the stop, detention, and use of force against Plaintiff.

33. Plaintiff's race was a motivating factor in Defendants' decision to stop, detain, and use force against him. Similarly situated non-Black individuals using lawful mobility devices in the same transit facility were not subjected to stops, detention, handcuffing, or use of force under comparable circumstances.

34. Any purported transit or regulatory basis for the stop was pretextual. Defendants exercised their authority against Plaintiff on account of his race while cloaking the stop in facially neutral terms.

## E. Denial of Medical Treatment

35. As a direct result of the excessively tight handcuffing and forced walk, Plaintiff's wrists were visibly swollen and he was in pain. Plaintiff repeatedly requested medical attention from each of the Defendant officers.

36. Defendant Perdomo-Crespo refused to obtain or summon medical treatment for Plaintiff. Defendant Ouyang refused to obtain or summon medical treatment for Plaintiff. Defendant Hernandez, as supervising officer with authority to call for medical assistance, refused to obtain or summon medical treatment for Plaintiff.

37. The refusal of all three officers to obtain medical treatment for a visibly injured detainee in their custody constituted a violation of NYPD Patrol Guide Procedure § 207-04, which requires officers to obtain medical treatment for injured persons in their custody, and a violation of Plaintiff's constitutional rights as a pretrial detainee under the Fourteenth Amendment.

## F. CCRB Investigation and Full Substantiation Record

38. Following the incident, Plaintiff filed CCRB Complaint No. 202408389. The CCRB conducted a full independent investigation including review of BWC footage from all three Defendant officers and officer interviews.

39. **The CCRB Board issued findings on December 22, 2025 (Executive Director Jonathan Darche) substantiating the following allegations:**

(A) Sergeant Hernandez spoke discourteously to Plaintiff — **SUBSTANTIATED (Command Discipline A)**;

(B) Sergeant Hernandez acted discourteously toward Plaintiff — **SUBSTANTIATED (Command Discipline A)**;

(C) Sergeant Hernandez made race-based remarks to Plaintiff — **SUBSTANTIATED (CHARGES — the highest CCRB penalty level, recommending formal NYPD departmental trial proceedings)**;

(D) Officer Ouyang did not obtain medical treatment for Plaintiff — **SUBSTANTIATED (Command Discipline A)**;

(E) Officer Perdomo-Crespo did not obtain medical treatment for Plaintiff — **SUBSTANTIATED (Command Discipline A)**;

(F) Sergeant Hernandez did not obtain medical treatment for Plaintiff — **SUBSTANTIATED (Command Discipline A)**;

(J) Officer Ouyang failed to provide Plaintiff a business card — **SUBSTANTIATED (Command Discipline A)**.

40. The CCRB's recommendation of formal Charges against Sergeant Hernandez is the Board's highest disciplinary recommendation, equivalent to recommending that the officer face a formal NYPD departmental trial. The CCRB found sufficient evidence of race-based offensive language after reviewing BWC footage and conducting officer interviews. This constitutes official government corroboration of discriminatory intent admissible in these proceedings.

41. The CCRB independently substantiated Officer Ouyang (Command Discipline B), Officer Perdomo-Crespo (Command Discipline A), and Sergeant Hernandez (Charges) as to the conduct at issue in this lawsuit. All findings arise from independent agency review of BWC footage and physical evidence.

## G. ADA Retaliation by Sharon Joachim and the Comptroller's Office

42. On or about December 3, 2025, Plaintiff served an ADA Reasonable Modification Demand upon the Office of the Comptroller of the City of New York in connection with the pending Notice of Claim and the underlying incident. The demand asserted Plaintiff's rights under Title II of the ADA and Section 504 of the Rehabilitation Act.

43. Defendant Sharon Joachim, as Claims Examiner for the Comptroller's Office, received, processed, or was responsible for the ADA demand. Despite receiving the demand—which was clearly labeled as an ADA accommodation and modification request with federal legal implications—Joachim took no action within a reasonable period and failed to direct the demand to appropriate City ADA compliance personnel.

44. The City of New York, through the Comptroller's Office and Defendant Joachim, effectively ignored Plaintiff's ADA demand, constituting retaliation against Plaintiff for asserting his federal disability rights, and independently violating Title II and Section 504's effective communication and reasonable modification requirements.

## H. Monell — Policy, Custom, and Failure to Train

45. The NYPD has a policy, practice, and/or custom of failing to train officers on the ADA requirements applicable to OPDMD users in transit facilities. 28 C.F.R. § 35.137 has been in effect since March 15, 2011. As of September 24, 2024—more than thirteen years later—the Defendant officers demonstrated no knowledge of or compliance with OPDMD regulations, establishing deliberate indifference to the obvious risk of ADA violations in transit encounters.

46. The NYPD has a policy, practice, and/or custom of inadequately supervising and disciplining officers with prior CCRB complaints. Defendants Hernandez, Perdomo-Crespo, and/or Ouyang had or were subject to CCRB processes prior to this incident, and the City's failure to take corrective action was a moving force behind the constitutional violations at issue.

47. The City's failure to adequately train officers on: (a) constitutional limitations on stops without reasonable suspicion; (b) the rights of OPDMD users under federal law; (c) the prohibition on race-based stops and uses of force; and (d) the obligation to provide medical treatment to injured detainees—constituted deliberate indifference to the rights of persons with disabilities and of racial minorities in transit encounters.

48. The widespread nature of the NYPD's unconstitutional stop-and-detain practices, documented extensively in prior litigation including Floyd v. City of New York, 959 F. Supp. 2d 540 (S.D.N.Y. 2013), constitutes a de facto policy that was a moving force behind the constitutional violations visited upon Plaintiff.

## CAUSES OF ACTION

### COUNT I 42 U.S.C. § 1983 — EXCESSIVE FORCE (Fourth Amendment) Against Defendants Hernandez, Perdomo-Crespo, and Ouyang, Individually

49. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

50. The Fourth Amendment prohibits the use of excessive force in effecting a seizure. Graham v. Connor, 490 U.S. 386 (1989). The use of force must be objectively reasonable under the totality of the circumstances.

51. Defendant Perdomo-Crespo applied excessively tight handcuffs to Plaintiff without justification. Despite Plaintiff's repeated and audible requests that the handcuffs be adjusted, Perdomo-Crespo refused, prolonging the application of excessive force and the resulting injury.

52. Defendant Hernandez, as supervising sergeant, had the authority and opportunity to order the handcuffs adjusted and refused to do so, making him personally liable for the continued application of excessive force.

53. Defendant Ouyang was present throughout the encounter, observed Plaintiff's visible distress and injury, and had a realistic opportunity to intervene to prevent the excessive force being applied by Perdomo-Crespo. Ouyang failed to intervene. Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).

54. Compelling a mobility-impaired detainee to walk an extended distance under restraint in excessively tight handcuffs constitutes an independent act of excessive force. Hope v. Pelzer, 536 U.S. 730 (2002).

55. The injury-causing handcuffing of a compliant, non-threatening, non-resisting detainee who makes unanswered requests for adjustment is a constitutional violation clearly established since at least Tracy v. Freshwater, 623 F.3d 90, 98-99 (2d Cir. 2010)—decided fourteen years before this incident.

56. The spitting upon Plaintiff during the encounter constitutes an additional harmful touching that independently establishes a constitutional violation.

57. Defendants are liable to Plaintiff for compensatory and punitive damages.

**COUNT II 42 U.S.C. § 1983 — UNLAWFUL SEIZURE / FALSE DETENTION (Fourth Amendment) Against Defendants Hernandez, Perdomo-Crespo, and Ouyang, Individually**

58. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

59. The Fourth Amendment prohibits stops and detentions without articulable reasonable suspicion of criminal activity. Terry v. Ohio, 392 U.S. 1 (1968). The right to be free from such seizures has been clearly established for over fifty years.

60. Defendants stopped and detained Plaintiff without any articulable reasonable suspicion that he had committed, was committing, or was about to commit any crime. Plaintiff's lawful use of an OPDMD in a transit facility, protected by federal law, cannot constitute the basis for a Terry stop.

61. Any transit rule or NYPD policy cited as justification for the stop was preempted by Title II of the ADA and 28 C.F.R. § 35.137. Federal law cannot be circumvented by a state or local rule.

62. Defendants are liable to Plaintiff for compensatory and punitive damages. Kerman v. City of New York, 374 F.3d 93 (2d Cir. 2004); Dufort v. City of New York, 874 F.3d 338 (2d Cir. 2017).

**COUNT III 42 U.S.C. § 1983 — DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS (Fourteenth Amendment) Against Defendants Hernandez, Perdomo-Crespo, and Ouyang, Individually**

63. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

64. As a pretrial detainee, Plaintiff was entitled to constitutionally adequate medical care under the Fourteenth Amendment. Darnell v. Pineiro, 849 F.3d 17 (2d Cir. 2017). The standard is objective deliberate indifference: whether a reasonable officer in Defendants' position knew or should have known that the failure to act created a substantial risk of serious harm.

65. Plaintiff's wrists were visibly swollen and he was in audible pain as a result of the excessively tight handcuffs. He made repeated, explicit requests for medical attention to all three Defendant officers.

66. NYPD Patrol Guide Procedure § 207-04 requires officers to obtain medical treatment for persons in their custody who are injured. All three Defendants violated this mandatory departmental policy.

67. All three Defendants—Hernandez, Perdomo-Crespo, and Ouyang—were independently substantiated by the CCRB for failing to obtain medical treatment for Plaintiff (findings F, E, D respectively), after the CCRB reviewed BWC footage. This official corroboration establishes that each officer's failure was knowing and unjustified.

68. Defendants are liable to Plaintiff for compensatory and punitive damages.

**COUNT IV TITLE II OF THE AMERICANS WITH DISABILITIES ACT 42 U.S.C. § 12132 Against Defendant City of New York**

69. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

70. Title II of the ADA provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity.

71. Plaintiff is a qualified individual with a disability. The City of New York and its NYPD are public entities. The transit facility at 42nd Street and 8th Avenue is a service and facility covered by Title II.

72. Plaintiff's federally protected OPDMD use was the proximate cause of the stop. The City's officers denied Plaintiff the equal benefit of transit access by stopping, detaining, and using force against him for using a device he was legally entitled to use.

73. The City's failure to train its officers on 28 C.F.R. § 35.137—a regulation in effect for over thirteen years—constitutes deliberate indifference to the obvious risk of disability discrimination in transit encounters and establishes liability for the resulting violation.

74. Plaintiff is entitled to compensatory damages, injunctive relief, and attorneys' fees under the ADA.

**COUNT V TITLE V OF THE AMERICANS WITH DISABILITIES ACT — RETALIATION 42 U.S.C. § 12203 Against Defendants City of New York and Sharon Joachim**

75. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

76. Title V of the ADA prohibits retaliation against any individual who has opposed any act or practice made unlawful by the ADA, or who has made a charge, testified, or engaged in any other protected activity under the ADA.

77. Plaintiff's filing of the Notice of Claim, CCRB complaint, and ADA Reasonable Modification Demand constitute protected activities under the ADA.

78. Defendant Joachim's failure to respond to Plaintiff's ADA Reasonable Modification Demand—received on or about December 3, 2025—constitutes retaliation for Plaintiff's

assertion of his federal disability rights. The City, through its Comptroller's Office, ratified this retaliatory failure.

79. Plaintiff is entitled to compensatory damages and attorneys' fees.

**COUNT VI SECTION 504 OF THE REHABILITATION ACT 29 U.S.C. § 794 Against Defendant City of New York**

80. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

81. Section 504 of the Rehabilitation Act prohibits discrimination against qualified individuals with a disability by any program or activity receiving federal financial assistance. The City of New York and NYPD receive federal financial assistance and are covered by Section 504.

82. The same conduct that violates Title II of the ADA independently violates Section 504 of the Rehabilitation Act, with the additional element that federal funding has been received.

83. Plaintiff is entitled to compensatory damages and attorneys' fees.

**COUNT VII NEW YORK STATE HUMAN RIGHTS LAW N.Y. Exec. Law § 296 Against All Defendants**

84. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

85. The NYSHRL prohibits discrimination against individuals on the basis of disability and race in public accommodations, including transit facilities and interactions with law enforcement.

86. Defendants discriminated against Plaintiff on the basis of his disability—by targeting him for use of an OPDMD—and on the basis of his race, in violation of the NYSHRL.

87. Plaintiff is entitled to compensatory damages and attorneys' fees.

**COUNT VIII NEW YORK CITY HUMAN RIGHTS LAW N.Y.C. Admin. Code § 8-107 Against All Defendants**

88. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

89. The NYCHRL is to be construed more broadly than its federal and state counterparts, independently of them. Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013). The NYCHRL prohibits discrimination and harassment on the basis of disability and race in public accommodations and by covered entities.

90. Defendants discriminated against and harassed Plaintiff on the basis of his disability and his race in violation of the NYCHRL. Individual officers are personally liable under the NYCHRL without qualification.

91. Plaintiff is entitled to compensatory damages and attorneys' fees.

**COUNT IX MUNICIPAL LIABILITY — MONELL 42 U.S.C. § 1983 Against Defendant City of New York**

92. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

93. The City of New York, through the NYPD, has established, maintained, and/or tolerated policies, customs, and practices that were the moving force behind the constitutional violations suffered by Plaintiff. Monell v. Dep't of Social Servs., 436 U.S. 658 (1978).

94. The City's failure to train officers on the rights of OPDMD users under 28 C.F.R. § 35.137—despite the regulation being in effect for more than thirteen years—constitutes deliberate indifference to the obvious risk of ADA and constitutional violations in transit encounters. City of Canton v. Harris, 489 U.S. 378, 388-89 (1989).

95. The City's failure to adequately supervise and discipline officers with prior CCRB misconduct findings, including Hernandez, constitutes a pattern and practice that was a proximate cause of the harm to Plaintiff. The CCRB's substantiation of Hernandez on Charges reflects not an isolated incident but a pattern of conduct the City failed to correct.

96. The City is liable for compensatory and injunctive relief.

**COUNT X NEGLIGENT HIRING, RETENTION, AND SUPERVISION (New York State Law) Against Defendant City of New York**

97. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

98. The City of New York owed Plaintiff a duty of care in the hiring, training, retention, and supervision of its police officers, including Defendants Hernandez, Perdomo-Crespo, and Ouyang.

99. The City knew or should have known, through prior CCRB complaints, disciplinary histories, and personnel records, that Defendants Hernandez, Perdomo-Crespo, and/or Ouyang posed an unreasonable risk of harm to members of the public, including Plaintiff.

100. The City's negligent hiring, retention, and supervision of these officers was a proximate cause of the injuries sustained by Plaintiff.

101. Plaintiff is entitled to compensatory damages under state tort law.

**COUNT XI 42 U.S.C. § 1983 — EQUAL PROTECTION / RACE-BASED SELECTIVE ENFORCEMENT (Fourteenth Amendment Equal Protection Clause) Against Defendants Hernandez, Perdomo-Crespo, and Ouyang, Individually**

102. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

103. The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from exercising governmental authority—including stops, detentions, and uses of force—in a racially discriminatory manner. Where race is a motivating factor in a law enforcement action, the Equal Protection Clause is violated. Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252 (1977).

104. In the Second Circuit, a claim for race-based selective enforcement requires Plaintiff to demonstrate: (1) that Defendants treated Plaintiff differently from similarly situated individuals not of the same race; and (2) that the differential treatment was motivated by discriminatory intent. Pyke v. Cuomo, 567 F.3d 74, 77 (2d Cir. 2009).

105. Plaintiff is Black. He was lawfully present in the transit facility, using a federally protected OPDMD, engaged in no unlawful conduct. Defendants stopped, detained, handcuffed, and used force against Plaintiff.

106. Similarly situated non-Black individuals using lawful mobility devices in the same transit facility were not subjected to stops, detention, handcuffing, or use of force under comparable circumstances.

107. **The CCRB independently investigated and substantiated Allegation C—that Sergeant Hernandez made race-based remarks to Plaintiff—and recommended formal Charges, the highest CCRB disciplinary penalty, consistent with a finding of significant misconduct. This official finding, made after BWC footage review and officer interviews by an independent government agency, constitutes corroborated evidence of racial animus and discriminatory intent.**

108. Race was a motivating factor in Defendants' decision to stop, detain, and use force against Plaintiff. Any purported transit or regulatory justification for the stop was pretextual. Whren v. United States, 517 U.S. 806, 813 (1996).

109. Defendants are liable to Plaintiff for compensatory and punitive damages. Smith v. Wade, 461 U.S. 30 (1983).

## COUNT XII 42 U.S.C. § 1981 — RACE DISCRIMINATION Against Defendants Hernandez, Perdomo-Crespo, and Ouyang, Individually

110. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

111. 42 U.S.C. § 1981 guarantees all persons within the jurisdiction of the United States the same right to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

112. Defendants' race-motivated stop, detention, and use of force against Plaintiff denied him the full and equal benefit of the law—specifically, the right to traverse a public transit facility without unlawful police interference—that similarly situated white individuals would have enjoyed.

113. The CCRB's substantiation of Hernandez on CHARGES for race-based offensive language during the incident provides official corroboration of the racial animus that animated Defendants' conduct.

114. Defendants are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1981. Johnson v. City of New York, 593 F. App'x 36 (2d Cir. 2014).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mark A. Westbrooks respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

A. Award Plaintiff compensatory damages in an amount to be determined at trial, including damages for physical injury to his wrists, pain and suffering, emotional distress, humiliation, and loss of enjoyment of life;

B. Award Plaintiff punitive damages against each individual Defendant in their individual capacities in an amount to be determined at trial, in light of the willful, malicious, and recklessly indifferent nature of their conduct, and in light of the official corroboration of that conduct by the CCRB;

C. Award Plaintiff nominal damages as appropriate;

D. Enter a declaratory judgment that Defendants' conduct violated Plaintiff's rights under the Fourth and Fourteenth Amendments, Title II and Title V of the ADA, Section 504 of the Rehabilitation Act, the NYSHRL, and the NYCHRL;

E. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, the ADA, and the Rehabilitation Act;

F. Award such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Mark A. Westbrooks

MARK A. WESTBROOKS

Plaintiff Pro Se

Brooklyn, New York

Email: mawbusiness@outlook.com

Phone: 917-524-6921

Dated: March 10, 2026

**CERTIFICATE OF SERVICE**

I, Mark A. Westbrooks, hereby certify that on the date set forth below, I caused a true and correct copy of the foregoing Second Amended Complaint and Notice of Filing Second Amended

Complaint Pursuant to Fed. R. Civ. P. 15 to be served upon the following by electronic mail and U.S. First Class Mail, postage prepaid:

Inna Shapovalova, Esq.
Joseph Capio, Esq.
Assistant Corporation Counsel
New York City Law Department
Special Federal Litigation Division
100 Church Street, New York, NY 10007
inshapov@law.nyc.gov

Attorneys for Defendants City of New York, Hernandez, Perdomo-Crespo, Ouyang, and Joachim

/s/ Mark A. Westbrooks
MARK A. WESTBROOKS
Dated: March 10, 2026