| | |
|---|---|
| MARK A. WESTBROOKS,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF NEW YORK; SGT. CARLOS HERNANDEZ, Shield No. 2085, individually; P.O. RUBEN PERDOMO-CRESPO, Shield No. 11626, individually; P.O. GUO OUYANG, Shield No. 10916, individually; SHARON JOACHIM, individually; and JOHN/JANE DOE SUPERVISORS AND OFFICERS 1-10, individually,<br><br>Defendants. | **UNITED STATES DISTRICT COURT**<br>**SOUTHERN DISTRICT OF NEW YORK**<br><br>Case No. 1:26-cv-00104-RA-RFT<br>Hon. Ronnie Abrams, U.S.D.J.<br>Hon. Robyn F. Tarnofsky, U.S.M.J.<br><br>**THIRD AMENDED COMPLAINT**<br>**JURY TRIAL DEMANDED** |

# THIRD AMENDED COMPLAINT

Plaintiff Mark A. Westbrooks, proceeding pro se, for his Third Amended Complaint against Defendants alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action arising under 42 U.S.C. §§ 1983, 1981, and 1988; the Fourth and Fourteenth Amendments; Title II and Title V of the ADA, 42 U.S.C. §§ 12132, 12203; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; the NYSHRL, N.Y. Exec. Law § 296; and the NYCHRL, N.Y.C. Admin. Code § 8-107.

2. In the early morning hours of **August 23, 2024**, Plaintiff Mark A. Westbrooks — a 100% service-connected disabled veteran lawfully using a federally protected Other Power-Driven Mobility Device ("OPDMD") in the 42nd Street/8th Avenue MTA subway passageway — was unlawfully stopped, forcibly handcuffed with excessive tightness causing immediate wrist injury and numbness, subjected to race-based verbal abuse, and denied emergency medical treatment by NYPD officers despite visible wrist injuries. After the officers retreated into the subway and removed his handcuffs upon departing, Plaintiff — injured, with numb and swollen wrists, and without his identification, Metro Card, or banking cards which were lost during the encounter — called 911 from outside the station requesting EMS and a supervisor. A second set of NYPD officers and an unidentified supervisor personally responded. City EMS arrived and treated Plaintiff at **1:14 AM on August 23, 2024**, documented by timestamped photographs. The injuries to Plaintiff's wrists — including persistent numbness — continue to this day.

3. Plaintiff is Black. The NYPD officers targeted him not because of any unlawful conduct — there was none — but because of his race and his use of a mobility device in a public transit facility. Plaintiff was compliant, cooperative, and unarmed throughout.

4. The CCRB independently investigated. Plaintiff filed CCRB Complaint No. 202408389 on August 23, 2024, confirmed by the CCRB's own March 10, 2026 official correspondence. The City's Valentin Order investigation (Doc. 18, filed March 23, 2026) independently confirmed the incident date as August 23, 2024. The CCRB issued seven substantiated findings on December 22, 2025, including formal Charges — the CCRB's highest penalty — against Sergeant Hernandez for race-based offensive language.

5. Plaintiff seeks compensatory and punitive damages against individual Defendants, declaratory relief, and attorneys' fees pursuant to 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4). Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367(a). Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as all events occurred in New York County.

## CORRECTION OF INCIDENT DATE

7. All prior complaints stated the incident date as September 24, 2024. That date was a typographical error. The correct date is **August 23, 2024**. This Third Amended Complaint corrects that error throughout. The error arose because: (a) the incident occurred in the early morning hours of August 23, 2024; and (b) during the encounter, Plaintiff's Metro Card, government-issued identification, and banking cards were lost as a direct consequence of the officers' unlawful conduct. This correction is consistent with the City's own Valentin investigation, which independently confirmed August 23, 2024 as the incident date (Doc. 18).

8. The correct date is confirmed by seven independent sources:

(a) **City's Valentin Investigation (Doc. 18, March 23, 2026):** City's counsel stated on the docket: "upon information and belief, the incident occurred on August 23, 2024." This is an on-the-record admission by the City.

(b) **Timestamped Photographs (1:14 AM and 1:17 AM, August 23, 2024):** Photographs of City EMS medics (1000026346.jpg, 1:14 AM) and EMS intake form

(1000026352.jpg, 1:17 AM) bear device-embedded timestamps of Friday, August 23, 2024, saved in folder "NYPD Settlement 300k.

(c) **CCRB Official Letter (City Document, March 10, 2026):** States the complaint was filed "on August 23, 2024.

(d) **CCRB Case No. 202408389 Encodes August 2024:** "2408" = Year 2024, Month 08. A September incident generates a "202409" case number.

(e) **Investigator Wheelock Contact, August 29, 2024:** CCRB contacted Plaintiff August 29; Plaintiff responded August 30 with formal statement and 25 photographs.

(f) **August 30, 2024 Email — Lost Property:** Subject line: "MTA ASSAULT AND BATTERY AND LOST OF METRO CARD ID, BANKING AND PATTERN OF NYPD MISCONDUCT" — documenting the property loss that caused the date error.

(g) **City EMS Records:** City EMS records of treatment at the scene on August 23, 2024 are in the City's possession.

**<u>CONDITIONS PRECEDENT</u>**

9. On November 22, 2024, Plaintiff filed Notice of Claim No. 2024 PI 037725 with the NYC Comptroller — 91 days after the August 23, 2024 incident, one day after the technical GML § 50-e deadline of November 21, 2024. The one-day variance does not defeat Plaintiff's state law claims.

10. First, the City had **actual knowledge** of the essential facts on August 23, 2024 through: (i) NYPD incident reports; (ii) BWC footage from Hernandez, Perdomo-Crespo, and Ouyang; (iii) BWC footage from the second responding officers and supervisor dispatched to Plaintiff's 911 call; (iv) 911 dispatch/CAD records; (v) City EMS records from the 1:14 AM treatment; (vi) MTA surveillance footage; and (vii) CCRB Case No. 202408389 filed the same day. *Bender v. New York City Health & Hosps. Corp.*, 38 N.Y.2d 662 (1976); *Teresta v. City of New York*, 304 N.Y. 440 (1952).

11. Second, in the alternative, all GML § 50-e(5) factors favor Plaintiff: actual knowledge through seven independent City sources; compelling excuse — Plaintiff's ID was lost during the incident as a direct result of the officers' unlawful conduct; and zero prejudice. *Williams v. Nassau Cty. Med. Ctr.*, 6 N.Y.3d 531 (2006); *Newcomb v. Middle Country Cent. Sch. Dist.*, 28 N.Y.3d 455 (2016).

12. More than thirty days have elapsed since filing of the Notice of Claim without adjustment or settlement. GML § 50-i is satisfied. Plaintiff has exhausted all applicable administrative prerequisites.

## PARTIES

13. Plaintiff MARK A. WESTBROOKS is a resident of Brooklyn, New York, a 100% service-connected disabled United States military veteran who uses an OPDMD as a result of his service-connected disability. Plaintiff is Black.

14. Defendant THE CITY OF NEW YORK ("City") is a municipal corporation operating the NYPD, sued under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and for state law claims.

15. Defendant SGT. CARLOS HERNANDEZ, Shield No. 2085, was at all relevant times an NYPD sergeant acting under color of state law, sued individually. Hernandez supervised and directed the unlawful stop, ordered denial of handcuff adjustment, made race-based verbal remarks to Plaintiff, and refused to obtain medical treatment.

16. Defendant P.O. RUBEN PERDOMO-CRESPO, Shield No. 11626, was at all relevant times an NYPD officer acting under color of state law, sued individually. Perdomo-Crespo applied excessively tight handcuffs, refused to adjust them despite Plaintiff's repeated requests, and refused to obtain medical treatment.

17. Defendant P.O. GUO OUYANG, Shield No. 10916, NYPD TB Subway Safety Task Force, was at all relevant times an NYPD officer acting under color of state law, sued individually. Ouyang's identity and shield number were confirmed by the City's Valentin Order letter (Doc. 18). Ouyang participated in Plaintiff's unlawful detention, failed to intervene against the excessive force, and refused to obtain medical treatment for Plaintiff.

18. Defendant SHARON JOACHIM was at all relevant times a Claims Examiner for the NYC Comptroller's Office, sued individually. Joachim received Plaintiff's ADA Reasonable Modification Demand on or about December 3, 2025, and failed to respond, act upon it, or forward it to appropriate ADA compliance personnel.

19. Defendants JOHN/JANE DOE SUPERVISORS AND OFFICERS 1-10 include: (a) the unidentified NYPD supervisor who personally responded outside the 42nd Street/8th Avenue station in response to Plaintiff's 911 call, who was personally present during EMS treatment of Plaintiff, personally observed Plaintiff's wrist injuries, and personally advised Plaintiff to file a CCRB complaint — constituting direct personal involvement as required

under *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020); and (b) additional unidentified NYPD officers who arrived at the scene in response to Plaintiff's 911 call, equipped with body-worn cameras capturing the aftermath of the incident. Their identities will be obtained through discovery of NYPD 911 dispatch records, CAD logs, and BWC footage.

## STATEMENT OF FACTS

### A. Plaintiff's Background and Federally Protected OPDMD Use

20. Plaintiff is a 100% service-connected disabled veteran who uses an OPDMD as defined by 28 C.F.R. § 35.137. Title II of the ADA and 28 C.F.R. § 35.137, in effect since March 15, 2011, require public transit facilities to permit OPDMD use. As of August 23, 2024 — more than thirteen years after that regulation took effect — Defendant officers demonstrated no knowledge of or compliance with these requirements.

21. In the early morning hours of August 23, 2024, Plaintiff was lawfully present in the MTA passageway at 42nd Street and 8th Avenue, using his OPDMD as he was federally entitled to do.

### B. Unlawful Stop, Detention, Excessive Force, and Denial of Medical Care

22. Defendant Hernandez, accompanied by Perdomo-Crespo and Ouyang, stopped Plaintiff without any articulable reasonable suspicion of criminal activity. Plaintiff was cooperative and compliant throughout. Defendants unlawfully seized Plaintiff without reasonable suspicion or probable cause, escalating the encounter into a prolonged custodial detention.

23. Without lawful justification, Perdomo-Crespo applied metal handcuffs with excessive tightness, causing immediate and severe pain and numbness in Plaintiff's wrists. Plaintiff explicitly and repeatedly requested adjustment. Perdomo-Crespo refused. Hernandez, as supervising sergeant, refused. Ouyang, present throughout, failed to intervene.

24. Defendants compelled Plaintiff to walk an extended distance through the transit facility while restrained in excessively tight handcuffs despite his mobility disability. During the encounter, Plaintiff was spat upon, constituting a further harmful touching.

25. Plaintiff's wrists were visibly swollen and **numb** — a condition persisting to this day. Plaintiff requested medical attention from all three Defendant officers. All three refused, in violation of NYPD Patrol Guide Procedure § 207-04. The handcuffs were not removed until the officers retreated back into the subway station upon departure — without calling for medical assistance.

### C. Loss of Identification and Property

26. During the encounter, Plaintiff's Metro Card, government-issued identification, and banking cards were lost as a direct consequence of the officers' unlawful conduct — documented in Plaintiff's August 30, 2024 email to CCRB Investigator Wheelock and the proximate cause of the typographical date error in all prior pleadings.

### D. Race-Based Conduct

27. Defendant Hernandez made verbal remarks to Plaintiff explicitly based on Plaintiff's race. Race was a motivating factor in Defendants' decision to stop, detain, and use force. Any purported regulatory basis was pretextual.

### E. Plaintiff's 911 Call, Second Officers, Supervisor, and EMS Treatment

28. After the original three officers retreated into the subway, Plaintiff — outside the station with numb and swollen wrists and without his identification — called 911 requesting emergency medical services and a police supervisor.

29. In response, a second set of NYPD officers arrived, including at least one unidentified supervisor (John/Jane Doe Supervisor) and at least one additional officer, all equipped with body-worn cameras. The supervisor was personally present, personally observed Plaintiff's injuries, and personally advised Plaintiff to file a CCRB complaint. Their identities and BWC footage are to be obtained through 911 dispatch and CAD records.

30. City EMS arrived and treated Plaintiff outside the station. Plaintiff photographed the EMS medics at **1:14 AM on August 23, 2024** (photograph 1000026346.jpg; device-embedded timestamp: Friday, August 23, 2024, 1:14 AM; folder: "NYPD Settlement 300k"), and the EMS intake at **1:17 AM** (photograph 1000026352.jpg). These are contemporaneous timestamped proof of the incident date, time, and EMS response.

31. Plaintiff filed CCRB Complaint No. 202408389 on August 23, 2024. The ongoing wrist numbness and pain are a direct and continuing consequence of the excessively tight handcuffing and the refusal of all three original officers to loosen the restraints or obtain medical treatment.

### F. CCRB Investigation — Seven Substantiated Findings

32. The CCRB conducted a full independent investigation, reviewing BWC footage from Hernandez, Perdomo-Crespo, and Ouyang. On December 22, 2025, the CCRB Board substantiated:

(A) Sgt. Hernandez spoke discourteously to Plaintiff — SUBSTANTIATED (Command Discipline A);

(B) Sgt. Hernandez acted discourteously toward Plaintiff — SUBSTANTIATED (Command Discipline A);

(C) Sgt. Hernandez made race-based remarks to Plaintiff — SUBSTANTIATED (CHARGES — highest CCRB penalty, recommending formal NYPD departmental trial);

(D) P.O. Ouyang failed to obtain medical treatment — SUBSTANTIATED (Command Discipline A);

(E) P.O. Perdomo-Crespo failed to obtain medical treatment — SUBSTANTIATED (Command Discipline A);

(F) Sgt. Hernandez failed to obtain medical treatment — SUBSTANTIATED (Command Discipline A);

(J) P.O. Ouyang failed to provide Plaintiff a business card — SUBSTANTIATED (Command Discipline A).

33. The Charges recommendation against Hernandez constitutes official government corroboration of discriminatory intent admissible in these proceedings.

**G. ADA Retaliation by Sharon Joachim**

34. On or about December 3, 2025, Plaintiff served an ADA Reasonable Modification Demand on the NYC Comptroller's Office. Defendant Joachim received the demand and failed to

respond, act upon it, or direct it to appropriate ADA compliance personnel, constituting retaliation for Plaintiff's assertion of federal disability rights.

**H. Monell — Deliberate Indifference and Unconstitutional Custom**

35. The NYPD maintained policies and customs of: (a) failing to train officers on ADA rights of OPDMD users under 28 C.F.R. § 35.137 in effect since 2011; (b) failing to supervise and discipline officers with prior CCRB complaints; and (c) condoning unconstitutional stops, documented in *Floyd v. City of New York*, 959 F. Supp. 2d 540 (S.D.N.Y. 2013). These policies were the moving force behind the constitutional violations suffered by Plaintiff.

## CAUSES OF ACTION

**COUNT I — EXCESSIVE FORCE, 42 U.S.C. § 1983 (Fourth Amendment)**
**Against Defendants Hernandez, Perdomo-Crespo, and Ouyang, Individually**

36. Plaintiff repeats and realleges all preceding paragraphs.

37. The Fourth Amendment prohibits objectively unreasonable force. *Graham v. Connor*, 490 U.S. 386 (1989). Perdomo-Crespo applied excessively tight handcuffs and refused to adjust them. Hernandez refused to order adjustment. Ouyang failed to intervene. *Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994). Compelling a mobility-impaired detainee to walk under excessively tight restraints is an independent act of excessive force. *Hope v. Pelzer*, 536 U.S. 730 (2002). Injury-causing handcuffing of a compliant detainee who makes unanswered requests violates clearly established law. *Tracy v. Freshwater*, 623 F.3d 90 (2d Cir. 2010). Spitting upon Plaintiff constitutes an additional harmful touching. Defendants

are liable for compensatory and punitive damages including for Plaintiff's ongoing wrist numbness.

**COUNT II — UNLAWFUL SEIZURE / FALSE DETENTION, 42 U.S.C. § 1983 (Fourth Amendment)**

**Against Defendants Hernandez, Perdomo-Crespo, and Ouyang, Individually**

38. Plaintiff repeats and realleges all preceding paragraphs.

39. Defendants stopped and detained Plaintiff without articulable reasonable suspicion. *Terry v. Ohio*, 392 U.S. 1 (1968). Plaintiff's lawful OPDMD use cannot constitute a basis for a Terry stop. Any transit rule cited was preempted by Title II of the ADA and 28 C.F.R. § 35.137. Defendants are liable for compensatory and punitive damages. *Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004).

**COUNT III — DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS, 42 U.S.C. § 1983**

**(Fourteenth Amendment) Against Defendants Hernandez, Perdomo-Crespo, and Ouyang, Individually**

40. Plaintiff repeats and realleges all preceding paragraphs.

41. As a pretrial detainee, Plaintiff was entitled to constitutionally adequate medical care. *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017). Plaintiff's wrists were visibly swollen and numb; all three Defendants refused repeated explicit requests for medical care. Severity is confirmed by the 911 call, EMS response at 1:14 AM, and ongoing wrist numbness. All

three were CCRB-substantiated for this failure after BWC review. Defendants are liable for compensatory and punitive damages.

**COUNT IV — TITLE II OF THE ADA, 42 U.S.C. § 12132**

**Against Defendant City of New York**

42. Plaintiff repeats and realleges all preceding paragraphs. The City denied Plaintiff equal transit access by stopping, detaining, and using force against him for using a federally protected OPDMD. The City's thirteen-year failure to train officers on 28 C.F.R. § 35.137 constitutes deliberate indifference. Plaintiff is entitled to compensatory damages, injunctive relief, and attorneys' fees.

**COUNT V — ADA RETALIATION, 42 U.S.C. § 12203**

**Against Defendants City of New York and Sharon Joachim**

43. Plaintiff repeats and realleges all preceding paragraphs. Plaintiff's Notice of Claim, CCRB complaint, and ADA Reasonable Modification Demand are protected activities. Joachim's failure to respond — ratified by the City — constitutes retaliation. Plaintiff is entitled to compensatory damages and attorneys' fees.

**COUNT VI — REHABILITATION ACT § 504, 29 U.S.C. § 794**

**Against Defendant City of New York**

44. Plaintiff repeats and realleges all preceding paragraphs. The same conduct violating Title II independently violates Section 504. The City receives federal financial assistance. Plaintiff is entitled to compensatory damages and attorneys' fees.

**COUNT VII — NEW YORK STATE HUMAN RIGHTS LAW, N.Y. Exec. Law § 296**

**Against All Defendants**

45. Plaintiff repeats and realleges all preceding paragraphs. Defendants discriminated against Plaintiff on the basis of his disability and race. Plaintiff is entitled to compensatory damages and attorneys' fees.

**COUNT VIII — NEW YORK CITY HUMAN RIGHTS LAW, N.Y.C. Admin. Code § 8-107**

**Against All Defendants**

46. Plaintiff repeats and realleges all preceding paragraphs. The NYCHRL is construed more broadly than federal and state counterparts. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102 (2d Cir. 2013). Individual officers are personally liable without qualification. Plaintiff is entitled to compensatory damages and attorneys' fees.

**COUNT IX — MONELL MUNICIPAL LIABILITY, 42 U.S.C. § 1983**

**Against Defendant City of New York**

47. Plaintiff repeats and realleges all preceding paragraphs. The City maintained policies and customs that were the moving force behind the constitutional violations. *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *City of Canton v. Harris*, 489 U.S. 378 (1989). Plaintiff is entitled to compensatory and injunctive relief.

**COUNT X — NEGLIGENT HIRING, RETENTION, AND SUPERVISION (New York State Law)**

**Against Defendant City of New York**

48. Plaintiff repeats and realleges all preceding paragraphs. The City knew or should have known through prior CCRB complaints that Defendants posed an unreasonable risk of harm. The City's negligence was a proximate cause of Plaintiff's injuries. Plaintiff is entitled to compensatory damages.

**COUNT XI — EQUAL PROTECTION / RACE-BASED SELECTIVE ENFORCEMENT**

**42 U.S.C. § 1983 (Fourteenth Amendment)**

**Against Defendants Hernandez, Perdomo-Crespo, and Ouyang, Individually**

49. Plaintiff repeats and realleges all preceding paragraphs. Plaintiff is Black, was lawfully present, and engaged in no unlawful conduct. The CCRB independently substantiated race-based remarks by Hernandez (Charges) after BWC review. *Pyke v. Cuomo*, 567 F.3d 74 (2d Cir. 2009). Defendants are liable for compensatory and punitive damages.

**COUNT XII — RACE DISCRIMINATION, 42 U.S.C. § 1981**

**Against Defendants Hernandez, Perdomo-Crespo, and Ouyang, Individually**

50. Plaintiff repeats and realleges all preceding paragraphs. Defendants' race-motivated conduct denied Plaintiff the equal benefit of the law. The CCRB's Charges substantiation against Hernandez corroborates the racial animus. Defendants are liable for compensatory and punitive damages. *Johnson v. City of New York*, 593 F. App'x 36 (2d Cir. 2014).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Mark A. Westbrooks respectfully requests that this Court:

A. Award compensatory damages including for permanent and ongoing wrist numbness and injury, pain and suffering, emotional distress, humiliation, and loss of enjoyment of life;

B. Award punitive damages against each individual Defendant in their individual capacities;

C. Enter a declaratory judgment that Defendants' conduct violated Plaintiff's rights under the Fourth and Fourteenth Amendments, the ADA, the Rehabilitation Act, the NYSHRL, and the NYCHRL;

D. Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, the ADA, and the Rehabilitation Act;

E. Award such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Mark A. Westbrooks

**MARK A. WESTBROOKS**

Plaintiff Pro Se

90 Sands Street, Unit 2713

Brooklyn, New York 11201

mawbusiness@outlook.com | 917-524-6621

Dated: March 23, 2026

**CERTIFICATE OF SERVICE**

I, Mark A. Westbrooks, hereby certify that on March 23, 2026, I served a true and correct copy of the foregoing Third Amended Complaint and accompanying Letter Motion upon the following by electronic mail and U.S. First Class Mail:

Inna Shapovalova, Esq. | Joseph Capio, Esq.

NYC Law Department, Special Federal Litigation Division

100 Church Street, New York, NY 10007

inshapov@law.nyc.gov | jcapio@law.nyc.gov

/s/ Mark A. Westbrooks

**MARK A. WESTBROOKS**

Dated: March 23, 2026