## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK A. WESTBROOKS,<br><br>　　Plaintiff,<br><br>-against-<br><br>THE CITY OF NEW YORK; SGT. CARLOS HERNANDEZ, Shield No. 2085, individually; P.O. RUBEN PERDOMO-CRESPO, Shield No. 11626, individually; P.O. GUO OUYANG, Shield No. 10916, individually; P.O. DIANA FULLER, Shield No. 1184, individually; P.O. LUKAS MORALES, Shield No. 26997, individually; SHARON JOACHIM, individually; and JOHN/JANE DOE SUPERVISORS AND OFFICERS 1-10, individually,<br><br>　　Defendants. | Case No. 1:26-cv-00104-RA-RFT<br><br>Hon. Ronnie Abrams, U.S.D.J.<br><br>Hon. Robyn F. Tarnofsky, U.S.M.J.<br><br>**FOURTH AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

### FOURTH AMENDED COMPLAINT

Plaintiff Mark A. Westbrooks, proceeding pro se, for his Fourth Amended Complaint against Defendants alleges as follows:

### PRELIMINARY STATEMENT

1. This is a civil rights action arising under 42 U.S.C. §§ 1983, 1981, and 1988; the Fourth and Fourteenth Amendments; Title II and Title V of the ADA, 42 U.S.C. §§ 12132, 12203;

Westbrooks v. City of New York et al., No. 1:26-cv-00104-RA-RFT

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; the NYSHRL, N.Y. Exec. Law § 296; and the NYCHRL, N.Y.C. Admin. Code § 8-107.

2. In the early morning hours of August 23, 2024, Plaintiff Mark A. Westbrooks — a 100% service-connected disabled veteran lawfully using a federally protected Other Power-Driven Mobility Device ("OPDMD") in the 42nd Street/8th Avenue MTA subway passageway — was unlawfully stopped, forcibly handcuffed with excessive tightness causing immediate wrist injury and numbness, subjected to race-based verbal abuse, and denied emergency medical treatment by NYPD officers despite visible wrist injuries. After the officers retreated into the subway and removed his handcuffs upon departing, Plaintiff — injured, with numb and swollen wrists, and without his identification, Metro Card, or banking cards which were lost during the encounter — called 911 from outside the station requesting EMS and a supervisor. A second set of NYPD officers personally responded. City EMS arrived and treated Plaintiff at 1:14 AM on August 23, 2024, documented by timestamped photographs. The injuries to Plaintiff's wrists — including persistent numbness — continue to this day.

3. Plaintiff is Black. The NYPD officers targeted him not because of any unlawful conduct — there was none — but because of his race and his use of a mobility device in a public transit facility. Plaintiff was compliant, cooperative, and unarmed throughout.

4. The CCRB independently investigated. Plaintiff filed CCRB Complaint No. 202408389 on August 23, 2024, confirmed by the CCRB's own March 10, 2026 official correspondence. The City's Valentin Order investigation (Doc. 18, filed March 23, 2026) independently confirmed the incident date as August 23, 2024. The CCRB issued seven substantiated findings on December 22, 2025, including formal Charges — the CCRB's highest penalty — against Sergeant Hernandez for race-based offensive language.

5. Plaintiff seeks compensatory and punitive damages against individual Defendants, declaratory relief, and attorneys' fees pursuant to 42 U.S.C. § 1988.

Westbrooks v. City of New York et al., No. 1:26-cv-00104-RA-RFT

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4). Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367(a). Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as all events occurred in New York County.

## CORRECTION OF INCIDENT DATE

7. All prior complaints stated the incident date as September 24, 2024. That date was a typographical error. The correct date is August 23, 2024. This Fourth Amended Complaint maintains the correction first made in the Third Amended Complaint. The error arose because: (a) the incident occurred in the early morning hours of August 23, 2024; and (b) during the encounter, Plaintiff's Metro Card, government-issued identification, and banking cards were lost as a direct consequence of the officers' unlawful conduct. This correction is consistent with the City's own Valentin investigation, which independently confirmed August 23, 2024 as the incident date (Doc. 18).

8. The correct date is confirmed by seven independent sources:

    (a) **City's Valentin Investigation (Doc. 18, March 23, 2026):** City's counsel stated on the docket: "upon information and belief, the incident occurred on August 23, 2024." This is an on-the-record admission by the City.

    (b) **Timestamped Photographs (1:14 AM and 1:17 AM, August 23, 2024):** Photographs of City EMS medics (1000026346.jpg, 1:14 AM) and EMS intake form (1000026352.jpg, 1:17 AM) bear device-embedded timestamps of Friday, August 23, 2024, saved in folder "NYPD Settlement 300k."

    (c) **CCRB Official Letter (City Document, March 10, 2026):** States the complaint was filed "on August 23, 2024."

    (d) **CCRB Case No. 202408389 Encodes August 2024:** "2408" = Year 2024, Month 08. A September incident generates a "202409" case number.

(e) **Investigator Wheelock Contact, August 29, 2024:** CCRB contacted Plaintiff August 29; Plaintiff responded August 30 with formal statement and 25 photographs.

(f) **August 30, 2024 Email — Lost Property:** Subject line: "MTA ASSAULT AND BATTERY AND LOST OF METRO CARD ID, BANKING AND PATTERN OF NYPD MISCONDUCT" — documenting the property loss that caused the date error.

(g) **City EMS Records:** City EMS records of treatment at the scene on August 23, 2024 are in the City's possession.

## CONDITIONS PRECEDENT

9. On November 22, 2024, Plaintiff filed Notice of Claim No. 2024 PI 037725 with the NYC Comptroller — 91 days after the August 23, 2024 incident, one day after the technical GML § 50-e deadline of November 21, 2024. The one-day variance does not defeat Plaintiff's state law claims.

10. First, the City had actual knowledge of the essential facts on August 23, 2024 through: (i) NYPD incident reports; (ii) BWC footage from Hernandez, Perdomo-Crespo, and Ouyang; (iii) BWC footage from the second responding officers dispatched to Plaintiff's 911 call; (iv) 911 dispatch/CAD records; (v) City EMS records from the 1:14 AM treatment; (vi) MTA surveillance footage; and (vii) CCRB Case No. 202408389 filed the same day. *Bender v. New York City Health & Hosps. Corp.*, 38 N.Y.2d 662 (1976); *Teresta v. City of New York*, 304 N.Y. 440 (1952).

11. Second, in the alternative, all GML § 50-e(5) factors favor Plaintiff: actual knowledge through seven independent City sources; compelling excuse — Plaintiff's ID was lost during the incident as a direct result of the officers' unlawful conduct; and zero prejudice. *Williams v. Nassau Cty. Med. Ctr.*, 6 N.Y.3d 531 (2006); *Newcomb v. Middle Country Cent. Sch. Dist.*, 28 N.Y.3d 455 (2016).

Westbrooks v. City of New York et al., No. 1:26-cv-00104-RA-RFT

12. More than thirty days have elapsed since filing of the Notice of Claim without adjustment or settlement. GML § 50-i is satisfied. Plaintiff has exhausted all applicable administrative prerequisites.

**PARTIES**

13. Plaintiff MARK A. WESTBROOKS is a resident of Brooklyn, New York, a 100% service-connected disabled United States military veteran who uses an OPDMD as a result of his service-connected disability. Plaintiff is Black.

14. Defendant THE CITY OF NEW YORK ("City") is a municipal corporation operating the NYPD, sued under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and for state law claims.

15. Defendant SGT. CARLOS HERNANDEZ, Shield No. 2085, was at all relevant times an NYPD sergeant acting under color of state law, sued individually. Hernandez supervised and directed the unlawful stop, ordered denial of handcuff adjustment, made race-based verbal remarks to Plaintiff, and refused to obtain medical treatment.

16. Defendant P.O. RUBEN PERDOMO-CRESPO, Shield No. 11626, was at all relevant times an NYPD officer acting under color of state law, sued individually. Perdomo-Crespo applied excessively tight handcuffs, refused to adjust them despite Plaintiff's repeated requests, and refused to obtain medical treatment.

17. Defendant P.O. GUO OUYANG, Shield No. 10916, NYPD TB Subway Safety Task Force, was at all relevant times an NYPD officer acting under color of state law, sued individually. Ouyang's identity and shield number were confirmed by the City's Valentin Order letter (Doc. 18). Ouyang participated in Plaintiff's unlawful detention, failed to intervene against the excessive force, and refused to obtain medical treatment for Plaintiff.

18. Defendant SHARON JOACHIM was at all relevant times a Claims Examiner for the NYC Comptroller's Office, sued individually. Joachim received Plaintiff's ADA Reasonable

Westbrooks v. City of New York et al., No. 1:26-cv-00104-RA-RFT

Modification Demand on or about December 3, 2025, and failed to respond, act upon it, or forward it to appropriate ADA compliance personnel.

19. In compliance with the Court's April 24, 2026 Order (Doc. 36) granting leave to substitute true names of previously unidentified defendants, and based on the City's April 16, 2026 Valentin compliance disclosure, the following defendants are named in place of the John/Jane Doe officers previously pleaded:

(a) Defendant **P.O. DIANA FULLER**, Shield No. 1184, NYPD Midtown South Precinct 014 (357 West 35th Street, New York, NY 10001), was at all relevant times an NYPD officer acting under color of state law, sued individually. Fuller personally responded to the scene outside the 42nd Street/8th Avenue station in response to Plaintiff's 911 call, was personally present during City EMS treatment of Plaintiff, personally observed Plaintiff's visibly swollen and numb wrists, personally handed Plaintiff her NYPD business card, and personally advised Plaintiff to file a CCRB complaint — constituting direct personal involvement as required under *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020);

(b) Defendant **P.O. LUKAS MORALES**, Shield No. 26997, NYPD Midtown South Detective Squad 241 (357 West 35th Street, New York, NY 10001), was at all relevant times an NYPD officer acting under color of state law, sued individually. Morales personally responded to the scene outside the 42nd Street/8th Avenue station in response to Plaintiff's 911 call, was personally present during City EMS treatment of Plaintiff, was equipped with a body-worn camera capturing the aftermath of the incident, and personally observed Plaintiff's visibly swollen and numb wrists — constituting direct personal involvement as required under *Tangreti*; and

(c) Defendants JOHN/JANE DOE SUPERVISORS AND OFFICERS 1-10 include any additional unidentified NYPD personnel who responded to the scene in connection with Plaintiff's 911 call, whose identities will be obtained through

Westbrooks v. City of New York et al., No. 1:26-cv-00104-RA-RFT

discovery of NYPD 911 dispatch records, CAD logs, and body-worn camera footage.

## STATEMENT OF FACTS

### A. Plaintiff's Background and Federally Protected OPDMD Use

20. Plaintiff is a 100% service-connected disabled veteran who uses an OPDMD as defined by 28 C.F.R. § 35.137. Title II of the ADA and 28 C.F.R. § 35.137, in effect since March 15, 2011, require public transit facilities to permit OPDMD use. As of August 23, 2024 — more than thirteen years after that regulation took effect — Defendant officers demonstrated no knowledge of or compliance with these requirements.

21. In the early morning hours of August 23, 2024, Plaintiff was lawfully present in the MTA passageway at 42nd Street and 8th Avenue, using his OPDMD as he was federally entitled to do.

### B. Unlawful Stop, Detention, Excessive Force, and Denial of Medical Care

22. Defendant Hernandez, accompanied by Perdomo-Crespo and Ouyang, stopped Plaintiff without any articulable reasonable suspicion of criminal activity. Plaintiff was cooperative and compliant throughout. Defendants unlawfully seized Plaintiff without reasonable suspicion or probable cause, escalating the encounter into a prolonged custodial detention.

23. Without lawful justification, Perdomo-Crespo applied metal handcuffs with excessive tightness, causing immediate and severe pain and numbness in Plaintiff's wrists. Plaintiff explicitly and repeatedly requested adjustment. Perdomo-Crespo refused. Hernandez, as supervising sergeant, refused. Ouyang, present throughout, failed to intervene.

24. Defendants compelled Plaintiff to walk an extended distance through the transit facility while restrained in excessively tight handcuffs despite his mobility disability. During the encounter, Plaintiff was spat upon, constituting a further harmful touching.

Westbrooks v. City of New York et al., No. 1:26-cv-00104-RA-RFT

25. Plaintiff's wrists were visibly swollen and numb — a condition persisting to this day. Plaintiff requested medical attention from all three Defendant officers. All three refused, in violation of NYPD Patrol Guide Procedure § 207-04. The handcuffs were not removed until the officers retreated back into the subway station upon departure — without calling for medical assistance.

### C. Loss of Identification and Property

26. During the encounter, Plaintiff's Metro Card, government-issued identification, and banking cards were lost as a direct consequence of the officers' unlawful conduct — documented in Plaintiff's August 30, 2024 email to CCRB Investigator Wheelock and the proximate cause of the typographical date error in all prior pleadings.

### D. Race-Based Conduct

27. Defendant Hernandez made verbal remarks to Plaintiff explicitly based on Plaintiff's race. Race was a motivating factor in Defendants' decision to stop, detain, and use force. Any purported regulatory basis was pretextual.

### E. Plaintiff's 911 Call, Responding Officers, and EMS Treatment

28. After the original three officers retreated into the subway, Plaintiff — outside the station with numb and swollen wrists and without his identification — called 911 requesting emergency medical services and a police supervisor.

29. In response, NYPD officers arrived, including Defendants P.O. Diana Fuller and P.O. Lukas Morales, both equipped with body-worn cameras. Defendant Fuller was personally present, personally observed Plaintiff's visibly swollen and numb wrists, personally handed Plaintiff her NYPD business card, and personally advised Plaintiff to file a CCRB complaint. Defendant Morales was personally present, personally observed Plaintiff's wrist injuries, and was equipped with a body-worn camera. Their body-worn camera footage captures the aftermath of the incident and is to be obtained through discovery.

Westbrooks v. City of New York et al., No. 1:26-cv-00104-RA-RFT

30. City EMS arrived and treated Plaintiff outside the station. Plaintiff photographed the EMS medics at 1:14 AM on August 23, 2024 (photograph 1000026346.jpg; device-embedded timestamp: Friday, August 23, 2024, 1:14 AM; folder: "NYPD Settlement 300k"), and the EMS intake at 1:17 AM (photograph 1000026352.jpg). These are contemporaneous timestamped proof of the incident date, time, and EMS response.

31. Plaintiff filed CCRB Complaint No. 202408389 on August 23, 2024. The ongoing wrist numbness and pain are a direct and continuing consequence of the excessively tight handcuffing and the refusal of all three original officers to loosen the restraints or obtain medical treatment.

### *F. CCRB Investigation — Seven Substantiated Findings*

32. The CCRB conducted a full independent investigation, reviewing BWC footage from Hernandez, Perdomo-Crespo, and Ouyang. On December 22, 2025, the CCRB Board substantiated:

(A) Sgt. Hernandez spoke discourteously to Plaintiff — SUBSTANTIATED (Command Discipline A);

(B) Sgt. Hernandez acted discourteously toward Plaintiff — SUBSTANTIATED (Command Discipline A);

(C) Sgt. Hernandez made race-based remarks to Plaintiff — SUBSTANTIATED (CHARGES — highest CCRB penalty, recommending formal NYPD departmental trial);

(D) P.O. Ouyang failed to obtain medical treatment — SUBSTANTIATED (Command Discipline A);

(E) P.O. Perdomo-Crespo failed to obtain medical treatment — SUBSTANTIATED (Command Discipline A);

(F) Sgt. Hernandez failed to obtain medical treatment — SUBSTANTIATED (Command Discipline A);

(J) P.O. Ouyang failed to provide Plaintiff a business card — SUBSTANTIATED (Command Discipline A).

33. The Charges recommendation against Hernandez constitutes official government corroboration of discriminatory intent admissible in these proceedings.

## G. ADA Retaliation by Sharon Joachim

34. On or about December 3, 2025, Plaintiff served an ADA Reasonable Modification Demand on the NYC Comptroller's Office. Defendant Joachim received the demand and failed to respond, act upon it, or direct it to appropriate ADA compliance personnel, constituting retaliation for Plaintiff's assertion of federal disability rights.

## H. Monell — Deliberate Indifference and Unconstitutional Custom

35. The NYPD maintained policies and customs of: (a) failing to train officers on ADA rights of OPDMD users under 28 C.F.R. § 35.137 in effect since 2011; (b) failing to supervise and discipline officers with prior CCRB complaints; and (c) condoning unconstitutional stops, documented in *Floyd v. City of New York*, 959 F. Supp. 2d 540 (S.D.N.Y. 2013). These policies were the moving force behind the constitutional violations suffered by Plaintiff.

## CAUSES OF ACTION

### COUNT I — EXCESSIVE FORCE, 42 U.S.C. § 1983 (Fourth Amendment)

*Against Defendants Hernandez, Perdomo-Crespo, and Ouyang, Individually*

36. Plaintiff repeats and realleges all preceding paragraphs.

37. The Fourth Amendment prohibits objectively unreasonable force. *Graham v. Connor*, 490 U.S. 386 (1989). Perdomo-Crespo applied excessively tight handcuffs and refused to adjust them. Hernandez refused to order adjustment. Ouyang failed to intervene. *Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994). Compelling a mobility-impaired detainee to walk under excessively tight restraints is an independent act of excessive force. *Hope v. Pelzer*, 536 U.S. 730 (2002). Injury-causing handcuffing of a compliant

Westbrooks v. City of New York et al., No. 1:26-cv-00104-RA-RFT

detainee who makes unanswered requests violates clearly established law. *Tracy v. Freshwater*, 623 F.3d 90 (2d Cir. 2010). Spitting upon Plaintiff constitutes an additional harmful touching. Defendants are liable for compensatory and punitive damages including for Plaintiff's ongoing wrist numbness.

## COUNT II — UNLAWFUL SEIZURE / FALSE DETENTION, 42 U.S.C. § 1983 (Fourth Amendment)

*Against Defendants Hernandez, Perdomo-Crespo, and Ouyang, Individually*

38. Plaintiff repeats and realleges all preceding paragraphs.

39. Defendants stopped and detained Plaintiff without articulable reasonable suspicion. *Terry v. Ohio*, 392 U.S. 1 (1968). Plaintiff's lawful OPDMD use cannot constitute a basis for a Terry stop. Any transit rule cited was preempted by Title II of the ADA and 28 C.F.R. § 35.137. Defendants are liable for compensatory and punitive damages. *Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004).

## COUNT III — DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS, 42 U.S.C. § 1983 (Fourteenth Amendment)

*Against Defendants Hernandez, Perdomo-Crespo, and Ouyang, Individually*

40. Plaintiff repeats and realleges all preceding paragraphs.

41. As a pretrial detainee, Plaintiff was entitled to constitutionally adequate medical care. *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017). Plaintiff's wrists were visibly swollen and numb; all three Defendants refused repeated explicit requests for medical care. Severity is confirmed by the 911 call, EMS response at 1:14 AM, and ongoing wrist numbness. All three were CCRB-substantiated for this failure after BWC review. Defendants are liable for compensatory and punitive damages.

## COUNT IV — TITLE II OF THE ADA, 42 U.S.C. § 12132

*Against Defendant City of New York*

42. Plaintiff repeats and realleges all preceding paragraphs. The City denied Plaintiff equal transit access by stopping, detaining, and using force against him for using a federally protected OPDMD. The City's thirteen-year failure to train officers on 28 C.F.R. § 35.137 constitutes deliberate indifference. Plaintiff is entitled to compensatory damages, injunctive relief, and attorneys' fees.

### COUNT V — ADA RETALIATION, 42 U.S.C. § 12203

*Against Defendants City of New York and Sharon Joachim*

43. Plaintiff repeats and realleges all preceding paragraphs. Plaintiff's Notice of Claim, CCRB complaint, and ADA Reasonable Modification Demand are protected activities. Joachim's failure to respond — ratified by the City — constitutes retaliation. Plaintiff is entitled to compensatory damages and attorneys' fees.

### COUNT VI — REHABILITATION ACT § 504, 29 U.S.C. § 794

*Against Defendant City of New York*

44. Plaintiff repeats and realleges all preceding paragraphs. The same conduct violating Title II independently violates Section 504. The City receives federal financial assistance. Plaintiff is entitled to compensatory damages and attorneys' fees.

### COUNT VII — NEW YORK STATE HUMAN RIGHTS LAW, N.Y. Exec. Law § 296

*Against All Defendants*

45. Plaintiff repeats and realleges all preceding paragraphs. Defendants discriminated against Plaintiff on the basis of his disability and race. Plaintiff is entitled to compensatory damages and attorneys' fees.

### COUNT VIII — NEW YORK CITY HUMAN RIGHTS LAW, N.Y.C. Admin. Code § 8-107

*Against All Defendants*

Westbrooks v. City of New York et al., No. 1:26-cv-00104-RA-RFT

46. Plaintiff repeats and realleges all preceding paragraphs. The NYCHRL is construed more broadly than federal and state counterparts. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102 (2d Cir. 2013). Individual officers are personally liable without qualification. Plaintiff is entitled to compensatory damages and attorneys' fees.

## COUNT IX — MONELL MUNICIPAL LIABILITY, 42 U.S.C. § 1983

*Against Defendant City of New York*

47. Plaintiff repeats and realleges all preceding paragraphs. The City maintained policies and customs that were the moving force behind the constitutional violations. *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *City of Canton v. Harris*, 489 U.S. 378 (1989). Plaintiff is entitled to compensatory and injunctive relief.

## COUNT X — NEGLIGENT HIRING, RETENTION, AND SUPERVISION (New York State Law)

*Against Defendant City of New York*

48. Plaintiff repeats and realleges all preceding paragraphs. The City knew or should have known through prior CCRB complaints that Defendants posed an unreasonable risk of harm. The City's negligence was a proximate cause of Plaintiff's injuries. Plaintiff is entitled to compensatory damages.

## COUNT XI — EQUAL PROTECTION / RACE-BASED SELECTIVE ENFORCEMENT, 42 U.S.C. § 1983 (Fourteenth Amendment)

*Against Defendants Hernandez, Perdomo-Crespo, and Ouyang, Individually*

49. Plaintiff repeats and realleges all preceding paragraphs. Plaintiff is Black, was lawfully present, and engaged in no unlawful conduct. The CCRB independently substantiated race-based remarks by Hernandez (Charges) after BWC review. *Pyke v. Cuomo*, 567 F.3d 74 (2d Cir. 2009). Defendants are liable for compensatory and punitive damages.

## COUNT XII — RACE DISCRIMINATION, 42 U.S.C. § 1981

Westbrooks v. City of New York et al., No. 1:26-cv-00104-RA-RFT

*Against Defendants Hernandez, Perdomo-Crespo, and Ouyang, Individually*

50. Plaintiff repeats and realleges all preceding paragraphs. Defendants' race-motivated conduct denied Plaintiff the equal benefit of the law. The CCRB's Charges substantiation against Hernandez corroborates the racial animus. Defendants are liable for compensatory and punitive damages. *Johnson v. City of New York*, 593 F. App'x 36 (2d Cir. 2014).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mark A. Westbrooks respectfully requests that this Court:

A. Award compensatory damages including for permanent and ongoing wrist numbness and injury, pain and suffering, emotional distress, humiliation, and loss of enjoyment of life;

B. Award punitive damages against each individual Defendant in their individual capacities;

C. Enter a declaratory judgment that Defendants' conduct violated Plaintiff's rights under the Fourth and Fourteenth Amendments, the ADA, the Rehabilitation Act, the NYSHRL, and the NYCHRL;

D. Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, the ADA, and the Rehabilitation Act;

E. Award such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Mark A. Westbrooks

**MARK A. WESTBROOKS**

Plaintiff Pro Se

Westbrooks v. City of New York et al., No. 1:26-cv-00104-RA-RFT

– 15 –

90 Sands Street, Unit 2713

Brooklyn, New York 11201

mawbusiness@outlook.com | 917-524-6621

Dated: April ___, 2026

Westbrooks v. City of New York et al., No. 1:26-cv-00104-RA-RFT

## CERTIFICATE OF SERVICE

I, Mark A. Westbrooks, hereby certify that on April ___, 2026, I served a true and correct copy of the foregoing Fourth Amended Complaint upon the following by electronic mail and the Court's CM/ECF system:

Inna Shapovalova, Esq.

Joseph Capio, Esq.

NYC Law Department

Special Federal Litigation Division

100 Church Street

New York, NY 10007

inshapov@law.nyc.gov

jcapio@law.nyc.gov


/s/ Mark A. Westbrooks

**MARK A. WESTBROOKS**

Dated: April ___, 2026